UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NIRVETA KUSURAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 08 C 794 |
| | ) | |
| SIX CONTINENTS HOTELS, INC., | ) | Judge Moran |
| d/b/a INTERCONTINENTAL | ) | |
| HOTELS CROUP, | ) | Mag. Judge Nolan |
| | ) | |
| Defendant. | ) | |

## FIRST AMENDED COMPLAINT

The plaintiff, by her attorney, Stephen B. Horwitz, complains of the defendant's denial of

short term and long term disability benefits, in violation of ERISA, and represents as follows:

1.    The plaintiff, Nirveta Kusuran ("plaintiff" or "Kusuran"), brings this action under

§ 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §

1132(a)(1)(B), to recover benefits due her under the terms of an employee welfare benefit plan

that provides, *inter alia*, for both short-term and long term disability benefits. Subject matter

jurisdiction is conferred by ERISA § 502(e)(1) and § 502(e)(1) (f), 29 U.S.C. § 1132(e)(1) and

(f), as well as 28 U.S.C. §§ 1331 and 1337.  Venue lies within this judicial district because it is a

place where the breach occurred and where defendant is to be found within the meaning of

ERISA § 502(e)(2).

2.    During all times material to the allegations of this complaint plaintiff was an

employee of the defendant, Six Continents Hotel, Inc., d/b/a Intercontinental Hotels Group

("Intercontinental"). Throughout the course of her 8-9 years of active employment with Inter-

continental, plaintiff held the position or classification as a housekeeper, employed at Intercon-

tinental's facility located at 505 N. Michigan Ave., Chicago, Illinois. As an employee of Intercontinental, plaintiff was a "participant," as that term is defined by ERISA § 3(7), in an "employee welfare benefit plan," as that term is defined by ERISA § 3(1), that provides both short term and long term disability. (Although one plan, Intercontinental's Short Term Disability Plan will be referred to as the "STD," and Intercontinental's Long Term Disability Plan will be referred to as the "LTD," and they will referred to collectively as the Disability Plan, or ""DP."")

3.    The defendant, Intercontinental, has been, during all times material to the allegations of this complaint, plaintiff's "employer," as that term is defined by ERISA § 3(5). And, during all times material to the allegations of this complaint, Intercontinental has been the "administrator" and "plan sponsor," as these terms are described by ERISA §§ 3(16)(A)(i) and 3(16)(B)(i), respectively, of the DP. (Attached hereto as Exhibit A are excerpts of the DP, as well as page 53 of the Summary Plan Description, pertaining to the employee welfare benefit plan at issue, that identifies Intercontinental as Plan Sponsor and Plan Administrator.) While Intercontinental is the Plan Administrator, Intercontinental has delegated to Prudential Financial ("Prudential") responsibility to administer both components of the DP, namely the STD and the LTD.

4.    As her years of employment with Intercontinental progressed, so did plaintiff's back problems. In or about 2002 or 2003, plaintiff was off work for approximately 5 months on account of an injury to her back that was occasioned by and arose out of her employment with Intercontinental. Although she was able to resume her duties as a housekeeper with Intercontinental, plaintiff's back problems had not dissipated, and those problems, with associated pain, had become chronic.

5.    On a typical work shift, plaintiff was responsible for cleaning 17 guest rooms, and

2

her assigned tasks included, but were not be limited to: carrying linens and towels, changing beds, lifting king-size mattresses, vacuuming rooms, climbing on a step stool do dust and clean furniture and cabinets, cleaning bathrooms, emptying trash, wheeling of a cleaning cart from room to room. These tasks would require plaintiff to bend, kneel, squat, and climb, and to do lifting and carrying of items weighing in excess of 20 pounds.

6.      On or about September 22, 2006, plaintiff reported for duty with Intercontinental, and completed her assigned tasks. On this work day, as on virtually every day over the past several years, plaintiff continued to experience lower back pain, particularly during the bending and lifting activities that were part and parcel of her routine duties as a housekeeper. Thereafter, and due to her low back problems, manifested by intense low back pain, plaintiff was unable to resume her duties as a housekeeper for Intercontinental, and September 22, 2006, would be her last day of active employment with Intercontinental.

7.      On or about September 25, 2006, plaintiff's primary care physician, Dr. Marina Vidovic, determined, after an examination of plaintiff, that plaintiff could not return to work – at least through October 17, 2006 – because Dr. Vidovic had placed restrictions on plaintiff performing any duties where she would have to lift 20 or more pounds, or had to engage in any bending. By mid-October, 2006, with plaintiff not having experienced improvement in her condition, she was referred by Dr. Vidovic to an orthopaedic surgeon, Dr. Edward Abraham. After securing the results of MRI imaging, Dr. Abraham rendered the diagnosis that plaintiff suffered from degenerative lumbar disc disease and facet arthritis, and ordered plaintiff to undergo 3 months of physical therapy. Physical therapy, however, did not result in any significant abatement of plaintiff's low back pains.

3

8.    Under the terms of the STD, after the onset of any injury or illness, there is a 7 day "elimination period" before benefits under the STD will be provided. *See*, Exhibit A at p. 12. Following Dr. Vidovic's instructions to plaintiff that her low back condition would require plaintiff to be off work for more than 3 weeks, with the earliest date of return being October 17, 2006, plaintiff made application for benefits under the STD with Intercontinental. Once the 7 day elimination period had expired, plaintiff received short term disability benefits from Intercontinental for the period between October 2, 2006 and October 18, 2006.

9.    The 2 weeks of short term disability benefits that plaintiff received until October 18, 2006, were paid to plaintiff by Prudential, as Intercontinental's delegatee. Prudential, however, ceased paying benefits under the STD effective October 18, 2006, because Prudential mistakenly believed that as of October 17, 2006 – the date Dr. Vidovic originally estimated that plaintiff would be able to return to work – plaintiff was no longer disabled. Upon information and belief, but unbeknownst to Prudential on or about October 17, 2006, the date of Prudential's cessation of short term disability benefits to plaintiff, Intercontinental had determined (as of October 17, 2006, and thereafter) that plaintiff could not return to duty because the restrictions that had been placed on plaintiff by Dr. Vidovic, namely "no lifting over 20 lbs – no bending indefinitely," meant that plaintiff was physically unable to perform work for Intercontinental, including work of a housekeeper.

10.    Nor did Prudential resume the payment of short term disability benefits to plaintiff notwithstanding the fact that –

> (a) On or about November 11, 2006, Dr. Vidovic certified that plaintiff was presently incapacitated and had an uncertain prognosis due to the degenerative disc disease and low back pain from which

4

she suffered.

(b) On or about November 28, 2006, Dr. Vidovic certified that plaintiff was unable to return to work because she was completely disabled.

(c) On or about January 11, 2007, Intercontinental notified and verified to Prudential that plaintiff had not been returned to duty since October 17, 2006, because the restrictions that had been placed on plaintiff by Dr. Vidovic, namely "no lifting over 20 lbs – no bending indefinitely," meant that plaintiff was physically unable to perform work for Intercontinental, including the work of a house-keeper. (Attached hereto as Exhibit B is the 1/11/07 verification of plaintiff's disability status by Intercontinental.)

(d) On or about March 19, 2007, Dr. Vidovic certified that plaintiff was disabled from performing any work, and that plaintiff's disa-bility would have a duration of probably one year.

11.    Following the cessation of benefit payments, plaintiff processed a series of

intermediate appeals with Prudential, in accordance with the Disability Plan's claims and review

provisions. Prudential denied these intermediate appeals, albeit for different reasons:

(a) On or about January 9, 2007, Prudential denied plaintiff's appeal with the suggestion that plaintiff was malingering.

(b) On or about March 2, 2007, Prudential denied plaintiff's appeal because her symptoms were not so severe as to justify permanent restrictions on her ability to perform the duties of a housekeeper.

12.    By August 17, 2007, the date Prudential, as Intercontinental's delegatee, decided

plaintiff's third and final appeal, Prudential no longer doubted that plaintiff was suffering from

permanent impairments to her back, but disability benefits under the STD and LTD, as well, were

still denied:

In relation to Ms. Kusuran's back, subsequent to the time period of October 16, 2006 through March 24, 2007 forward, up until the present time, Ms. Kusuran has evidence of impairment, particularly

5

in relation to her decreased lumbosacral range of motion due to
underlying severe degenerative disc disease as documented by way
of MRI imaging noted on the repeat lumbar MRI scan of November
13, 2006.  This repeat scan showed significant degenerative disc
disease at her L3-L4, L4-L5, and L5-S1 with spondylosis at her L4-
L5 and L5-S1. Imaging findings are concordant with decreased
range of motion with ongoing pain. Ms. Kusuran demonstrates
functional impairment in her lumbosacral range of motion, which
was present from October 16, 2006, and forward for a continuous
period of time forward. This documentation is noted in her physical
therapy notes on December 12, 2006 . . . and . . . [a]bnormal exams
are also noted in November 28, 2006 and December 5, 2006, with
decreased lumbar range of motion, pain with her forward bending,
tenderness to palpation and a positive LasSgue's maneuver . . .

The physician [retained by Prudential] . . . indicates that appropriate
restrictions and limitations as of . . . October 16, 2006 forward
based upon the presence of . . . lumbar range of motion impairment
should include: Sitting, unrestricted. Standing, unrestricted. Walk-
ing, unrestricted. Lifting and carrying up to 20 pounds occasionally
and up to 10 pounds frequently. Restrict pushing and pulling up to
20 pounds occasionally and up to 10 pounds frequently. Restrict
bending and stooping to occasionally. Restrict squatting and kneel-
ing to occasionally. Unrestricted for use of the upper extremities for
fine and gross motor activities including reaching. Restricted in
total for climbing of ladders and balancing.

Recommended treatment in order to address the presence of the
current impairment in relation to Ms. Kusuran's spine could
include: Interventional pain management, Medical pain manage-
ment and Psychology pain management.

The duration of the above impairment is most likely permanent
based upon Ms. Kusuran's degenerative findings that are demon-
strated on her lumbar MRI imaging. These degenerative findings
correlate with the presence of subjective pain and are likely to
persist indefinitely. The prognosis for return to work within the
restrictions and limitations described above is good. The prognosis
for full recovery and the change of eliminating restrictions are poor.
                    *    *    *
*** Ms. Kusuran's self reported chronic pain is supported by both
diagnostic testing and physical exam findings.  The physical
findings and diagnostic testing are concordant with her pain

6

described. Particularly, diagnostic testing . . . reveals findings of significant degenerative disc disease . . . with the presence of spondylosis . . . The physical examination of December 05, 2006 correlates with the underlying degenerative findings . . . Overall, the nature of Ms. Kusuran's physical examination findings and diagnostic testing . . . do corroborate with her self reported pain complaints. However, we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above. As a result, we have upheld our decision to terminate her claim for STD benefits, effective October 16, 2006. We have upheld our decision to disallow her claim for LTD benefits as recovery occurred during the elimination period. (Attached hereto as Exhibit C is the denial of plaintiff's appeal dated August 17, 2007 (the "Denial")); emphasis added.

13.    The Denial of plaintiff's appeal by Intercontinental, through its delegatee,

Prudential, was, by its terms, "final and cannot be appealed further to Prudential." Accordingly,

plaintiff has exhausted all remedies required of her under the DP.

14.    The denial of both short term and long term disability benefits to plaintiff, by

Intercontinental, through its delegatee, Prudential, is contrary to the terms of the Disability Plan,

for one or more of the following reasons:

(a) The assertion in the Denial, made by Prudential, Intercontinental's delegatee, that "we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above," is in direct conflict with the determination of Intercontinental, to wit: with work restrictions that included "no lifting over 20 lbs – no bending indefinitely," Intercontinental knew, and was in a far better position than Prudential to know, that plaintiff was not able to perform her duties as a housekeeper.

(b) The Denial's assertion that "we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above," was, upon information and belief, made without an adequate understanding of the material and substantial duties of plaintiff's job as a housekeeper for Intercontinental.

7

(c) The assertion made in the Denial that "[t]he prognosis for return to work within the restrictions and limitations described above is good," coupled with Prudential's recommendation about the type of treatment that might "address the presence of the current impairment," is inconsistent with the cessation of short term disability benefits on or about October 16, 2006, since, on the date of the Denial, August 17, 2007, Prudential acknowledged, by its use of the word "prognosis," that whether plaintiff could return to work was still something that depended on the course of future events.

(d) The assertion made in the Denial that "[t]he prognosis for return to work within the restrictions and limitations described above is good," fails to take into account the severity of pain that plaintiff has experienced, and would continue to experience, in performing the tasks of a housekeeper.

(e) Since on or about September 25, 2006, and continuing on and after August 17, 2007, plaintiff has been unable to perform the material and substantial duties of her regular occupation, *to wit*, as a housekeeper for Intercontinental.

15.    Prudential's cessation of the payment of short term disability benefits to plaintiff, prior to the expiration of her receipt of 26 weeks of such benefits, and Prudential's denial of long term disability benefits, once plaintiff had exhausted short term disability benefits which would have occurred during the first week of April 2007, constitutes a violation of the documents and instruments governing the Plan, and in violation of ERISA § 502(a)(1)(B).

WHEREFORE, plaintiff prays that the foregoing violations be remedied as follows:

A.    That the Court order Intercontinental to pay to plaintiff an additional 24 weeks of short term disability benefits;

B.    That the Court order Intercontinental to pay to plaintiff long term disabilty benefits retroactive to the first week of April 2007, with such long term disability benefits to continue to be paid until such

8

time as plaintiff is no longer entitled to such benefit, or upon the
attainment of her normal retirement age.

C.     That the Court order the Plan to pay attorney's fees to plaintiff's

attorney, and all costs and expenses incurred in the prosecution of

this action as provided for in ERISA § 502 (g)(1); and

D.     That the Court order such other and further relief against the Plan as

would be just and equitable.

Respectfully submitted,

Stephen B. Horwitz
Plaintiff's Attorney

Sugarman & Horwitz
221 N. LaSalle Street, Suite 626
Chicago, Illinois 60601
312-629-2920

# Six Continents Hotels, Inc. DBA Intercontinental Hotels Group

Short Term Disability Coverage

Long Term Disability Coverage





# Short Term Disability Coverage

## BENEFIT INFORMATION

### How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 5 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period for disability due to an accident which begins while you are covered is 7 days; your elimination period for disability due to a sickness which begins while you are covered is 7 days.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

### How Does Prudential Define Disability?

During the elimination period, you are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you are not working at any job.

After the elimination period, you are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in weekly earnings due to the same sickness or injury.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment every two weeks for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *weekly payment*:

1.  Multiply your weekly earnings by 60%. If this amount is not a multiple of $1.00, it will be rounded to the next higher multiple of $1.00.

2.  The maximum *weekly benefit* is $1,500.00.

3.  Compare the answer in item 1 with the maximum weekly benefit. The lesser of these two amounts is your *gross disability payment*.

4.  Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your weekly payment.

After the elimination period, if you are disabled for less than 1 week, we will send you 1/7 of your payment for each day of disability.

*Weekly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Weekly benefit* means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 50% of your indexed monthly earnings within 12 months of your return to work. But, if you enrolled for Option 2, it means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% of your indexed monthly earnings within 12 months of your return to work.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

***Injury*** means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

***Indexed monthly earnings*** means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your ***elimination period***. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is 180 days.

***Elimination period*** means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your ***monthly payment***:

1.  If you are enrolled for Option 1, multiply your monthly earnings by 50%. But, if you are enrolled for Option 2, multiply your monthly earnings by 60%.

2.  The maximum ***monthly benefit*** is $10,000.00.

3.  Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your ***gross disability payment***.

4.  Subtract from your gross disability payment any ***deductible sources of income***.

(42175-12)

# SUMMARY PLAN DESCRIPTION

This booklet is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974. ERISA requires that you be given a "Summary Plan Description" which describes the plan and informs you of your rights under it.

## Plan Name

Short Term Disability and Long Term Disability Coverage for All a) non-union Employees; and b) union Employees of any participating company that has expressly adopted the benefits offered by Six Continents Hotels Group and by a collective bargaining agreement covering the union Employee.

## Plan Number

501

## Type of Plan

Employee Welfare Benefit Plan

## Plan Sponsor

Six Continents Hotels, Inc. DBA Intercontinental Hotels Group
3 Ravinia Drive
Suite 2900
Atlanta, Georgia  30346-2149

## Employer Identification Number

58-2283470

## Plan Administrator

Six Continents Hotels, Inc. DBA Intercontinental Hotels Group
Attention:  Human Resources Department
3 Ravinia Drive
Suite 2900
Atlanta, Georgia  30346-2149

## Agent for Service of Legal Process

Six Continents Hotels, Inc. DBA Intercontinental Hotels Group
Attention:  Human Resources Department
3 Ravinia Drive
Suite 2900
Atlanta, Georgia  30346-2149

## Plan Year Ends

December 31st

(42175-12)

SPD                                          53



# INTERCONTINENTAL.
### CHICAGO

January 11, 2007

Tiffany Brockington
**The Prudential Insurance Company of America**
**Disability Management Services**
P.O. Box 13480
Philadelphia, PA 19101

Dear Tiffany:

This letter is to verify that Mrs. Nirveta Kusuran came to my office on October 17, 2006 indicating that she would be able to return to work with restrictions which we were not able to accommodate. I am also providing a copy of the physician's note.

If you have any questions please feel free to contact me at (312) 321-8720 and I will be happy to assist you.

Sincerely,

Chris Hybki
Human Resources Director

Enclosure

am

*WE KNOW WHAT IT TAKES.*

**EXHIBIT**
tabbies
B



# Prudential Financial

James E Furman
Sr. Appeals Analyst

The Prudential Insurance Company of America
Disability Management Services
PO Box 13480
Philadelphia, PA 19176

Phone: (800) 842-1718 Ext: 87423
Fax: (866) 285-8569
Website: www.prudential.com/inst/gldi

August 17, 2007

Barry Greenburg
Suite 3150
180 North LaSalle Street
Chicago, IL 60601

Claimant: Nirveta Kusuran
Claim No.: 10900811
Date of Birth: 06/23/1950
Control No./Br.: 42175 / A0024

Dear Mr. Greenburg:

We have completed our review of your second request for reconsideration of our decision to terminate Ms. Nirveta Kusuran's Short Term Disability (STD) and disallow her Long Term Disability (LTD) benefits under the Group Policy No. 42175 issued to Six Continents Hotel, DBA Intercontinental. We have determined that our decision was appropriate and have upheld our decision to terminate and disallow her claim for STD and LTD benefits. This letter outlines the reasons for this determination.

Ms. Kusuran's claim states that she discontinued working as a Housekeeper on September 22, 2006 due to back pain. Her claim for STD benefits was approved through October 15, 2006 and terminated effective October 16, 2006 as we determined that medical documentation in file no longer supported an impairment that would have prevented her from performing the duties of her regular occupation. This decision was upheld on first appeal. A complete explanation of that decision can be found in our letters dated January 09, 2007 and February 28, 2007.

In order to receive benefits under Group Policy No. 42175, covered employees must meet all contractual requirements including the following definition of "Disability":

"You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so.



EXHIBIT

C

We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim."

Furthermore, this Coverage pays LTD benefits when you have a continuous period of Disability and benefits start after the Elimination Period. The Elimination Period is defined as 180 days of continuous Disability.

Therefore, Prudential must determine that you had a period of continuous Disability during the Elimination Period from September 25, 2006 through March 23, 2007 in order to be eligible for LTD benefits under this Coverage effective March 24, 2007.

We have received your second request to appeal our decision to terminate and disallow Ms. Kusuran's STD and LTD benefits. In your appeal, you indicate that our previous decision was based on incomplete medical records. You state that Ms. Kusuran remains disabled from her occupation under the terms of the group policy. Medical records were submitted with the appeal request.

As part of your second appeal request Ms. Kusuran's claim file was reviewed by a physician who specializes in Physical Medicine and Rehabilitation.

In relation to Ms. Kusuran's back, subsequent to the time period of October 16, 2006 through March 24, 2007 forward, up until the present time, Ms. Kusuran has evidence of impairment, particularly in relation to her decreased lumbosacral range of motion due to underlying severe degenerative disc disease, as documented by way of MRI imaging noted on the repeat lumbar MRI scan of November 13, 2006. This repeat scan showed significant degenerative disc disease at her L3-L4, L4-L5, and L5-S1 with spondylosis at her L4-L5 and L5-S1. Imaging findings are concordant with decreased range of motion with ongoing pain. Ms. Kusuran demonstrates functional impairment in her lumbosacral range of motion, which was present from October 16, 2006, and forward for a continuous period of time forward. This documentation is noted in her physical therapy notes on December 12, 2006, of decreased lumbar range of motion in all planes and a demonstrated right positive straight leg raise. Abnormal exams are also noted on November 28, 2006 and December 5, 2006, with decreased lumbar range of motion, pain with her forward bending, tenderness to palpation and a positive LasSgue's maneuver at 30 degrees.

The physician who reviewed Ms. Kusuran's file indicates that appropriate restrictions and limitations as of the time period in question of October 16, 2006 forward, based upon the presence of the above-described lumbar range of motion impairment should include: Sitting, unrestricted. Standing, unrestricted. Walking, unrestricted. Lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently. Restrict pushing and pulling up to 20 pounds occasionally and up to 10 pounds frequently. Restrict bending and stooping to occasionally. Restrict squatting and kneeling to occasionally. Unrestricted for use of the upper extremities for fine and gross motor activities including reaching. Restricted in total for climbing of ladders and balancing.

Recommended treatment in order to address the presence of the current impairment in relation to Ms. Kusuran's spine could include: Interventional pain management, Medical pain management and Psychology pain management.

The duration of the above impairment is most likely permanent based upon Ms. Kusuran's degenerative findings that are demonstrated on her lumbar MRI imaging. These degenerative findings correlate with the presence of subjective pain and are likely to persist indefinitely. The prognosis for return to work within the restrictions and limitations described above is good. The prognosis for full recovery and the chance of eliminating restrictions are poor.

08/20/2007  12:44    3127265609    BARRY H GREENBURG    PAGE  04/04
20-Aug-2007 01:57 PM Prudential Financial 9735487755

Review of the medical records showed no evidence of any medication side effects described. Specifically, the medical records do not reference or support that Ms. Kusuran is suffering from cognitive deficit or any other adverse side effect due to medication usage.

Light Work: Work which requires exerting up to 20 pounds of force occasionally, and/or up to 10 pounds frequently, and/or a negligible amount of force constantly to lift, carry, push, pull, or otherwise move objects.

Even though the amount of force may be negligible, a job should be rated in this category if; it requires standing or walking to a significant degree, OR it requires sitting most of the time but entails pushing, pulling or manipulating of arm or leg controls, OR it requires work at a production rate/pace entailing constant pushing, pulling of materials of negligible weight.

## Summary

We have thoroughly evaluated the medical information on file, as well as the documentation received with your appeal. Ms. Kusuran's self reported chronic pain is supported by both diagnostic testing and physical exam findings. The physical exam findings and diagnostic testing are concordant with her pain described. Particularly, diagnostic testing, including recent MRI imaging of November 13, 2006, reveals findings of significant degenerative disc disease at her L3-L4, L4-L5, and L5-S1 with the presence of spondylosis at her L4-L5 and L5-S1. The physical examination of December 05, 2006 correlates with the underlying degenerative findings as noted by way of MRI, revealing pain and lumbar range of motion deficits along with a positive right Lasgue's maneuver at 30 degrees. Overall, the nature of Ms. Kusuran's physical examination findings and diagnostic testing, specifically the MRI as described, do corroborate with her self reported pain complaints. However, we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above. As a result, we have upheld our decision to terminate her claim for STD benefits, effective October 16, 2006. We have upheld our decision to disallow her claim for LTD benefits as recovery occurred during the elimination period.

This decision is final and cannot be appealed further to Prudential. If you still disagree with the above decision, you may file a lawsuit under the Employee Retirement Income Security Act (ERISA). ERISA allows you to file suit for policy benefits and reasonable attorney's fees.

Part 919 of the Rules of the Illinois Department of Insurance requires that our company advise you that if you wish to take this matter up with the Illinois Department of Insurance, it maintains a Consumer Division in Chicago at 100 W. Randolph Street, Suite 15-100, Chicago, Illinois 60601 and in Springfield at 320 West Washington Street, Springfield, Illinois 62767.

If you have any questions, please contact me at (800) 842-1718, extension 87423.

Sincerely,

*James E. Furman*

James E Furman
Sr. Appeals Analyst