UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NIRVETA KUSURAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO.   08 C 794 |
| v. | ) | |
| | ) | Judge Moran |
| SIX CONTINENTS HOTELS, INC. d/b/a | ) | |
| INTERCONTINENTAL HOTELS GROUP, | ) | Magistrate Judge Nolan |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S ANSWER TO AMENDED COMPLAINT**

Defendant Six Continents Hotels, Inc., by and through its attorneys, hereby answers the Amended Complaint ("Complaint") in the above-referenced matter as follows:

1. **The plaintiff, Nirveta Kusuran ("plaintiff' or "Kusuran"), brings this action under § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), to recover benefits due her under the terms of an employee welfare benefit plan that provides, inter alia, for both short-term and long term disability benefits. Subject matter jurisdiction is conferred by ERISA § 502(e)(1) and § 502(e)(1) (f), 29 U.S.C. § 1132(e)(1) and (f), as well as 28 U.S.C. §§ 1331 and 1337. Venue lies within this judicial district because it is a place where the breach occurred and where defendant is to be found within the meaning of ERISA § 502(e)(2).**

    **ANSWER:** Defendant admits jurisdiction and venue are proper and that Plaintiff asserts claims pursuant to the cited provisions. Defendant denies the remaining allegations of paragraph 1 of the Complaint.

2. **During all times material to the allegations of this complaint plaintiff was an employee of the defendant, Six Continents Hotel, Inc., d/b/a Intercontinental Hotels Group ("Intercontinental"). Throughout the course of her 8-9 years of active employment with Intercontinental, plaintiff held the position or classification as a housekeeper, employed at Intercontinental's facility located at 505 N. Michigan Ave., Chicago, Illinois. As an employee of Intercontinental, plaintiff was a "participant," as that term is defined by**

> ERISA § 3(7), in an "employee welfare benefit plan," as that term is defined by ERISA § 3(1), that provides both short term and long term disability. (Although one plan, Intercontinental's Short Term Disability Plan will be referred to as the "STD," and Intercontinental's Long Term Disability Plan will be referred to as the "LTD," and they will referred to collectively as the Disability Plan, or ""DP.")

**ANSWER:** Defendant admits that Plaintiff was employed by an affiliate of Defendant at Defendant's facility located at 505 N. Michigan Ave., Chicago, Illinois beginning April 1, 2005. Defendant further admits that Plaintiff was a participant in an employee welfare plan that provides short-term and long-term disability benefits. Defendant denies the remaining allegations contained in paragraph 2.

> 3. The defendant, Intercontinental, has been, during all times material to the allegations of this complaint, plaintiff's "employer," as that term is defined by ERISA § 3(5). And, during all times material to the allegations of this complaint, Intercontinental has been the "administrator" and "plan sponsor," as these terms are described by ERISA §§ 3(16)(A)(î) and 3(16)(B)(i), respectively, of the DP. (Attached hereto as Exhibit A are excerpts of the DP, as well as page 53 of the Summary Plan Description, pertaining to the employee welfare benefit plan at issue, that identifies Intercontinental as Plan Sponsor and Plan Administrator.) While Intercontinental is the Plan Administrator, Intercontinental has delegated to Prudential Financial ("Prudential") responsibility to administer both components of the DP, namely the STD and the LTD.

**ANSWER:** The allegation of the first sentence of paragraph 3 constitutes a conclusion of law for which not responsive pleading is required. Defendant admits that it is the administrator of a short-term and long-term disability benefits plan according to the terms and conditions of the plan, and Prudential Insurance Company of America ("Prudential") is the claims administrator for the plan. Defendant denies the remaining allegations contained in paragraph 3.

> 4. As her years of employment with Intercontinental progressed, so did plaintiff's back problems. In or about 2002 or 2003, plaintiff was off work for approximately 5 months on account of an injury to her back that was occasioned by and arose out of her employment with Intercontinental. Although she was able to resume her duties as a house-keeper with

> **Intercontinental, plaintiff's back problems had not dissipated, and those problems, with associated pain, had become chronic.**

**ANSWER:** Defendant denies that Plaintiff was off work for approximately five months in 2002 or 2003. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4.

> **5.    On a typical work shift, plaintiff was responsible for cleaning 17 guest rooms, and her assigned tasks included, but were not be limited to: carrying linens and towels, changing beds, lifting king-size mattresses, vacuuming rooms, climbing on a step stool to dust and clean furniture and cabinets, cleaning bathrooms, emptying trash, wheeling of a cleaning cart from room to room. These tasks would require plaintiff to bend, kneel, squat, and climb, and to do lifting and carrying of items weighing in excess of 20 pounds.**

**ANSWER:** Defendant admits that while Plaintiff was employed as an AM Room Attendant, plaintiff was responsible for cleaning up to 17 guest rooms. Defendant further admits that Plaintiff's assigned tasks included carrying linens and towels, changing beds, vacuuming rooms, climbing on a step stool to dust and clean furniture and cabinets, cleaning bathrooms, emptying trash, and wheeling of a cleaning cart from room to room. Defendant further admits that Plaintiff's job sometimes required her to bend, kneel, squat and lift. Defendant denies the remaining allegations contained in paragraph 5.

> **6.    On or about September 22, 2006, plaintiff reported for duty with Intercontinental, and completed her assigned tasks. On this work day, as on virtually every day over the past several years, plaintiff continued to experience lower back pain, particularly during the bending and lifting activities that were part and parcel of her routine duties as a housekeeper. Thereafter, and due to her low back problems, manifested by intense low back pain, plaintiff was unable to resume her duties as a housekeeper for Intercontinental, and September 22, 2006, would be her last day of active employment with Intercontinental.**

**ANSWER:** Defendant admits that Plaintiff reported for duty on September 22, 2006, and that it was her last day of active employment. After reasonable investigation, Defendant is

without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 6.

> 7. **On or about September 25, 2006, plaintiff's primary care physician, Dr. Marina Vidovic, after an examination of plaintiff, determined that plaintiff could not return to work - at least through October 17, 2006 - because she had placed restrictions on plaintiff performing any duties where she would have to lift 20 or more pounds, or had to engage in any bending. By mid-October, 2006, with plaintiff not having experienced improvement in her condition, she was referred by Dr. Vidovic to an orthopaedic surgeon, Dr. Edward Abraham. After securing the results of MRI imaging, Dr. Abraham rendered the diagnosis that plaintiff suffered from degenerative lumbar disc disease and facet arthritis, and ordered plaintiff to undergo 3 months of physical therapy. Physical therapy, however, did not result in any significant abatement of plaintiff's low back pains.**

**ANSWER:** Defendant admits that it received a note from Dr. Vidovic dated September 25, 2006, stating that Plaintiff was able to return to work on October 17, 2006, with limitations of "No lifting over 20 lbs, no bending-indefinitely." After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7.

> 8. **Under the terms of the STD, after the onset of any injury or illness, there is a 7 day "elimination period" before benefits under the STD will be provided. Following Dr. Viodovi's instructions to plaintiff that her low back condition would require plaintiff to be off work for more than 3 weeks, with the earliest date of return being October 17, 2006, plaintiff made application for benefits under the STD with Intercontinental. Once the 7 day elimination period had expired, plaintiff received short term disability benefits from Intercontinental for the period between October 2, 2006 and October 18, 2006.**

**ANSWER:** Defendant admits that Plaintiff made a claim to Prudential for short-term disability benefits and that Prudential made benefit payments to Plaintiff. Defendant further admits that Prudential terminated disability payments on October 18, 2006. The remaining allegations of paragraph 8 purport to characterize written documents which terms speak for

themselves, and Defendant denies such allegations to the extent they do not accurately reflect the terms of those documents.

9. **The 2 weeks of short term disability benefits that plaintiff received until October 18, 2006, were paid to plaintiff by Prudential. However, Prudential ceased paying benefits under the STD effective October 18, 2006, because Prudential mistakenly believed that as of October 17, 2006 - the date Dr. Vidovic originally estimated that plaintiff would be able to return to work - plaintiff was no longer disabled. Upon information and belief, but unbeknownst to Prudential on or about October 17, 2006, the date of Prudential's cessation of short term disability benefits to plaintiff, Intercontinental had determined (as of October 17, 2006, and thereafter) that plaintiff could not return to duty because the restrictions that had been placed on plaintiff by Dr. Vidovic, namely "no lifting over 20 lbs - no bending indefinitely," meant that plaintiff was physically unable to perform work for Intercontinental, including work of a housekeeper.**

**ANSWER:** Defendant admits that Prudential terminated disability payments on October 18, 2006. Defendant admits on October 17, 2006, Plaintiff indicated that she would be able to return to work with restrictions which defendant was not able to accommodate. After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9.

10. **Nor did Prudential resume the payment of short term disability benefits to plaintiff notwithstanding the fact that -**

    (a) **On or about November 11, 2006, Dr. Vidovic certified that plaintiff was presently incapacitated and had an uncertain prognosis due to the degenerative disc disease and low back pain from which she suffered.**

    (b) **On or about November 28, 2006, Dr. Vidovic certified that plaintiff was unable to return to work because she was completely disabled.**

    (c) **On or about January 11, 2007, Intercontinental notified and verified to Prudential that plaintiff had not been returned to duty since October 17, 2006, because the restrictions that had been placed on plaintiff by Dr. Vidovic, namely "no lifting over 20 lbs - no bending indefinitely," meant that plaintiff was physically unable to perform work for Intercontinental, including the work of a house-keeper.**

>> **(Attached hereto as Exhibit B is the 1/11/07 verification of plaintiff's disability status by Intercontinental.)**
>
> (d) **On or about March 19, 2007, Dr. Vidovic certified that plaintiff was disabled from performing any work, and that plaintiff's disability would have a duration of probably one year.**

**ANSWER:** Defendant admits that Prudential did not resume disability payments. Defendant admits that on January 11, 2007, it contacted Prudential and verified that Plaintiff "indicated that she would be able to return to work with restrictions which [defendant was] not able to accommodate." After reasonable investigation, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10.

> 11. **Following the cessation of benefit payments, plaintiff processed a series of intermediate appeals with Prudential, in accordance with the Disability Plan's claims and review provisions. Prudential denied these intermediate appeals, albeit for different reasons:**
>
> (a) **On or about January 9, 2007, Prudential denied plaintiff's appeal with the suggestion that plaintiff was malingering.**
>
> (b) **On or about March 2, 2007, Prudential denied plaintiff's appeal because her symptoms were not so severe as to justify permanent restrictions on her ability to perform the duties of a housekeeper.**

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11.

> 12. **By the time Prudential decided plaintiff's third, and final appeal, on or about August 17, 2007, Prudential no longer doubted that plaintiff was suffering from permanent impairments to her back, but disability benefits under the STD and LTD, as well, were still denied:**
>
> **in relation to Ms. Kusuran's back, subsequent to the time period of October 16, 2006 through March 24, 2007 forward, up until the present time, <u>Ms. Kusuran has evidence of impairment, particularly in relation to her decreased lumbosacral range of motion due to underlying severe degenerative disc disease as documented by way of MRI imaging</u> noted on**

the repeat lumbar MRI scan of November 13, 2006. This repeat scan showed significant degenerative disc disease at her L3-L4, L4-L5, and L5-S1 with spondylosis at her L4-L5 and L5-S1. <u>Imaging findings are concordant with decreased range of motion with ongoing pain. Ms. Kusuran demonstrates functional impairment in her lumbosacral range of motion, which was present from October 16, 2006, and forward for a continuous period of time forward</u>. This documentation is noted in her physical therapy notes on December 12, 2006 ... and ... [a]bnormal exams are also noted in November 28, 2006 and December 5, 2006, with decreased lumbar range of motion, pain with her forward bending, tenderness to palpation and a positive LasSgue's maneuver ...

The physician [retained by Prudential] ... indicates that appropriate restrictions and limitations as of ... October 16, 2006 forward based upon the presence of ... lumbar range of motion impairment should include: Sitting, unrestricted. Standing, unrestricted. Walking, unrestricted. Lifting and carrying up to 20 pounds occasionally and up to 10 pounds frequently. Restrict pushing and pulling up to 20 pounds occasionally and up to 10 pounds frequently. Restrict bending and stooping to occasionally. Restrict squatting and kneeling to occasionally. Unrestricted for use of the upper extremities for fine and gross motor activities including reaching. Restricted in total for climbing of ladders and balancing.

Recommended treatment in order to address the presence of the current impairment in relation to Ms. Kusuran's spine could include: Interventional pain management, Medical pain management and Psychology pain management.

<u>The duration of the above impairment is most likely permanent based upon Ms. Kusuran's degenerative findings that are demonstrated on her lumbar MRI imaging. These degenerative findings correlate with the presence of subjective pain and are likely to persist indefinitely</u>. The prognosis for return to work within the restrictions and limitations described above is good. <u>The prognosis for full recovery and the change of eliminating restrictions are poor</u>.

\*\*\* <u>Ms. Kusuran's self reported chronic pain is supported by both diagnostic testing and physical exam findings</u>. The physical findings and diagnostic testing are concordant with her pain described. Particularly, diagnostic testing . . . reveals findings of significant degenerative disc disease . . . with the presence of spondylosis . . . The physical examination of December 05, 2006 correlates with the underlying degenerative findings . . . Overall, the nature of Ms. Kusuran's physical examination findings and diagnostic testing ... do corroborate with her self reported pain complaints. However, we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above. As a result, we have upheld our decision to terminate her claim for STD benefits,

**effective October 16, 2006. We have upheld our decision to disallow her claim for LTD benefits as recovery occurred during the elimination period. (Attached hereto as Exhibit C is the denial of plaintiff's appeal dated August 17, 2007 (the "Denial")); emphasis added.**

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12.

13. **The Denial of plaintiff's appeal by Intercontinental, through its delegatee, Prudential, was, by its terms, "final and cannot be appealed further to Prudential." Accordingly, plaintiff has exhausted all remedies required of her under the DP.**

**ANSWER:** Defendant admits that Plaintiff has exhausted all administrative appeals required of her under the short-term and long-term disability plan. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13.

14. **The denial of both short term and long term disability benefits to plaintiff, by Intercontinental, through its delegatee, Prudential, is contrary to the terms of the Disability Plan, for one or more of the following reasons:**

    (a) **The assertion in the Denial, made by Prudential, Intercontinental's delegatee, that "we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above," is in direct conflict with the determination of Intercontinental, to wit: with work restrictions that included "no lifting over 20 lbs - no bending indefinitely," Intercontinental knew, and was in a far better position than Prudential to know, that plaintiff was not able to perform her duties as a housekeeper.**

    (b) **The Denial's assertion that "we maintain that Ms. Kusuran is able to perform the duties of her regular occupation within the restrictions and limitations as described above," was, upon information and belief, made without an adequate understanding of the material and substantial duties of plaintiff's job as a housekeeper for Intercontinental.**

    (c) **The assertion made in the Denial that "[t]he prognosis for return to work within the restrictions and limitations described above is good," coupled with Prudential's recommendation about the type of treatment that might "address the presence of the current impairment," is inconsistent with the**

        cessation of short term disability benefits on or about October 16, 2006, since, on the date of the Denial, August 17, 2007, Prudential acknowledged, by its use of the word "prognosis," that whether plaintiff could return to work was still something that depended on the course of future events.

    (d)    The assertion made in the Denial that "[t]he prognosis for return to work within the restrictions and limitations described above is good," fails to take into account the severity of pain that plaintiff has experienced, and would continue to experience, in performing the tasks of a housekeeper.

    (e)    Since on or about September 25, 2006, and continuing on and after August 17, 2007, plaintiff has been unable to perform the material and substantial duties of her regular occupation, *to wit*, as a housekeeper for Intercontinental.

**ANSWER:** Defendant denies the allegations contained in paragraph 14.

**15.** **Prudential's cessation of the payment of short term disability benefits to plaintiff, prior to the expiration of her receipt of 26 weeks of such benefits, and Prudential's denial of long term disability benefits, once plaintiff had exhausted short term disability benefits which would have occurred during the first week of April 2007, constitutes a violation of the documents and instruments governing the Plan, and in violation of ERISA § 502(a)(1)(B).**

**ANSWER:** Defendant denies the allegations contained in paragraph 15.

## ADDITIONAL DEFENSES

1. Defendant and/or Prudential have the discretion to interpret the Plan, make eligibility determinations under the applicable short-term and long-term disability plans, and make any and all factual determinations under such plans. Defendant and/or Prudential's determinations under such plan are entitled to deference.

2. Any benefits due under the applicable short-term and long-term disability plans are subject to offset in accordance with the terms of such plans.

3. Defendant is entitled to attorney's fees under 29 U.S.C. §1132(g).

WHEREFORE, Defendant Six Continents Hotels, Inc., respectfully requests that judgment be entered in its favor, that the Complaint be dismissed with prejudice, and that Defendant be awarded its costs and fees.

Dated: May 28, 2008

                                                  Respectfully submitted,

                                                  /s/Lucy Dunn Schwallie

Thomas F. Hurka
Lucy Dunn Schwallie
MORGAN, LEWIS & BOCKIUS
77 W. Wacker, Fifth Floor
Chicago, IL 60657
(312) 324-1000
(312) 32401001

Attorneys for Defendant, Six Continents Hotels, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2008, I electronically filed the foregoing **Defendant's Answer to Amended Complaint** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

>
> Stephen B. Horwitz
> Sugarman & Horwitz
> 221 N. LaSalle Street, Suite 626
> Chicago, IL 60601

>
>
> /s/ Lucy Schwallie_____
> Lucy Dunn Schwallie